IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MATT J. RUPPEL,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS D. BASMAJIAN, an individual, 1415 SOUTH MAIN STREET, LLC, a Delaware Limited Liability Company, BLACK SQUARE REAL ESTATE, INC., a Delaware Corporation, the BASMAJIAN RUPPEL GENERAL PARTNERSHIP, a Utah General Partnership,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:14-cv-728-DB<br><br>District Judge Dee Benson |

    This matter is before the court on two motions for summary judgment filed by Defendant, Thomas D. Basmajian ("Basmajian"). (Dkt. Nos. 67 and 68.) Basmajian's first motion for summary judgment seeks a ruling as a matter of law that Matt Ruppel ("Ruppel") and Basmajian's association was not a general partnership as that term is defined in the Utah Uniform Partnership Act. (Dkt. No. 67.) Basmajian's second motion seeks summary judgment on the basis of a release provision in a Redemption Agreement signed by Ruppel. (Dkt. No. 68.) The court held a hearing on the motions on June 19, 2017. At the hearing, Ruppel was represented by Margaret H. Olson. Basmajian was represented by Thomas W. Seiler. At the conclusion of the hearing, the court took the motions for summary judgment under advisement. Now being fully advised, the court renders the following Memorandum Decision and Order.

BACKGROUND

The court, as it must, "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment"—Ruppel here. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

During the latter part of 2004, Ruppel and Basmajian were both out of work. (*Id.* at 63 and 67.) They met in Salt Lake City, Utah, to discuss a possible future business relationship. (Dkt. No. 8, Amended Complaint ("Compl.") at ¶ 10; Dkt. No. 12, Answer at ¶ 4.) Ruppel had knowledge and expertise purchasing sub and nonperforming mortgage loans. (Answer at ¶ 5.) Basmajian had expertise managing the ownership and disposition of performing and nonperforming residential mortgage loans, including the management and disposition of post-foreclosed REO properties. (Dkt. No. 72-5, Basmajian Resume.) The two "discussed the opportunity to make money in single family assets through having information about the underlying collateral—single family houses—and have a more efficient acquisition and disposition method for REO assets…." (Dkt. No. 72-32, Deposition of Matt Ruppel ("Ruppel Dep.") at 54-65.)

In 2004, Ruppel formed, owned and controlled 406 Partners, LLC, as sole Member and Manager. (Ruppel Dep. at 32, 52, 54, 62, and 159.) Ruppel capitalized 406 Partners, LLC with a personal investment of $750,000. (*Id.*) On January 28, 2005, 406 Partners, LLC, as sole member, formed 406 Real Estate Services, LLC, for the purpose of engaging in REO operations and construction management. (Dkt. No. 72-7.) A few days later, on February 1, 2005, Ruppel and Basmajian formed 1415 South Main, LLC, each with a 50% interest. (Dkt. No. 72-8.) That same day, 1415 South Main, LLC purchased a commercial office building, and Ruppel and Basmajian

each signed a personal guaranty securing the full amount of the commercial mortgage. (Dkt. No. 72-9, 72-10.) Three days later, on February 4, 2005, Basmajian entered into an "LLC Membership Interest Purchase Agreement" for the right to acquire an ownership interest in Brighton Real Estate Services, LLC, a company that managed the disposition and sale of REO properties. (Compl. at ¶ 26, Answer at ¶ 16.) 1415 South Main, LLC was the parties' "place of operation where [they] had multiple people supporting [their] business endeavors, one of which was Brighton." (Ruppel Dep. at 30.)

On May 20, 2005, Ruppel and Basmajian formed 406 EG, LLC, to allocate interests in all of the "406 Group" entities with an initial membership of 44.88% each. (Ruppel Dep. at 30-36.) To match Ruppel's $750,000 monetary contribution to 406 Partners, LLC, Basmajian contributed "the work he had been doing which yielded the Brighton REO platform." (*Id.* at 32, 54, 62, 159.) Within a few weeks of the formation of 406 EG, LLC, the parties, through their various legal entities, formed several other limited liability companies, including Balto EG, LLC, Balto, LLC, 406 Technology, LLC, 406 Mortgages Services, LLC, and 406 Management, LLC. (Dkt. Nos. 72-14—18.) Ruppel and Basmajian—or the entities they controlled—managed each of these entities for various purposes related to the acquisition and disposition of REO assets. (Ruppel Dep. at 30-36.)

On June 30, 2005, Ruppel and Basmajian each entered into an Employment Agreement with 406 Management, LLC. (Dkt. Nos. 72-19; 72-20.) Basmajian was the Managing Director of Real Estate Management and Ruppel was Managing Director. (*Id.*) Both Employment Agreements had identical job descriptions and identical compensation, with each receiving a

salary of $250,000 per year. (*Id.*) Both Ruppel and Basmajian agreed to devote their "full business time and energies to the business and affairs of the Company." (*Id.*)

On June 30, 2008, Ruppel redeemed his interest in 406 EG, LLC, by way of a Redemption Agreement entered into by Ruppel, 406 EG, LLC, and Gold Creek Capital Management, LLC ("Gold Creek"), a limited liability company which Ruppel formed and for which he was the sole member. (Dkt. No. 46-5.) Basmajian signed the Redemption Agreement on behalf of 406 EG, LLC. (*Id.*) Ruppel signed the Redemption Agreement on behalf of himself as a member of 406 EG, LLC, and as Manager of Gold Creek. (Ruppel Dep. at 144.) In the Redemption Agreement, the parties agreed to a mutual release. (*Id.*) Ruppel agreed to a release as follows:

> (a) <u>Release by Member</u>. Member and Gold Creek, with the intention of binding themselves and their respective successors and assigns, hereby generally releases and forever discharges the Company [406 EG, LLC], each Affiliate [406 Partners, LLC; 406 Real Estate Services, LLC; 406 Integrated Services, LLC; 406 Mortgage Services, LLC; 406 Technology, LLC; and 406 Management, LLC], and their past, present and future parents and subsidiaries, divisions, members, shareholders, officers, directors, employees, affiliates, partners, assigns, successors and any other person, firm or corporation with whom any of them is now or may hereafter be affiliated (collectively, the "<u>Company Releasees</u>") and holds each of them harmless from any and all claims, demands, obligations, losses, causes of action, damages, penalties, costs expenses, attorney's fees, liabilities and indemnities of any nature whatsoever including, without limitation, claims for discrimination, tortuous interference with economic relations and intentional infliction of emotional distress, whether based on contract, tort or statute or other legal or equitable theory of recovery, whether known or unknown, which as of the date of this Agreement, Member or Gold Creek had, now has or claims to have or may claim to have in the future, against any Company Releasee arising out of or in any way related to Member's ownership of the Redeemed Interest, the redemption of the Redeemed Interest as set forth in this Agreement or any other matter relating to any Company Releasee, other than with respect to any breach of any obligation of or misrepresentation of the Company set forth in this Agreement. The consideration recited in this Agreement is the sole consideration for this release.

(Dkt. No. 68-1.) Ruppel was not represented by counsel when the Agreement was executed, but does not dispute that he entered into the Agreement knowingly and voluntarily and that he was not threatened or coerced into signing the Agreement. (Ruppel Dep. at 144.) As consideration for the Redemption Agreement, Ruppel received five million dollars and a mutual release from 406 EG, LLC. (Dkt. No. 68-1.)

Following the execution of the Redemption Agreement, from 2008 to 2014, Ruppel and Basmajian continued to do business together through 1415 South Main Street, LLC. (*See* Dkt. No. 73-10—73-20; Dkt. No. 72-29.) They continued to own property, and each maintained personal guarantees on those properties. (*Id.*) Jeff Jonas, a member of 406 EG, LLC who shared an office building with Basmajian and Ruppel, stated that, based on his observations of the dealings between the parties, he "never understood the Redemption Agreement to obviate all existing contractual obligations among the members of 406 EG, LLC and their different business interests." (Dkt. No. 73-2 at ¶ 6.) Mr. Jonas further observed that, subsequent to the execution of the Redemption Agreement, 1415 South Main, LLC continued its business operations. (*Id.*)

Throughout the parties' business relationship—from 2004 to 2014—Ruppel and Basmajian often referred to each other as "partners", including in emails (*see, e.g.,* Dkt. No. 72-29), official documents to third parties (*see, e.g.,* Dkt. No. 73-20; Dkt. No. 72-27), and when speaking to each other (Dkt. No. 35.) Mr. Jonas, who was involved in many of the parties' business dealings and "interacted with Ruppel and Basmajian on a near daily basis" from 2004 to 2015, testified that the two "held themselves out to me as partners" and "always maintained joint control over their business and all business decisions." (Dkt. No. 73-2 at ¶ 2-3.)

In November 2008, Basmajian signed a Term Sheet with Brighton Real Estate Services, LLC. (Dkt. No. 73-2 at ¶ 4.) Brighton Real Estate Services, LLC distributed an amount exceeding two million dollars directly to Basmajian. (*Id.*) Jeff Jonas, a member of both 406 EG, LLC and Brighton Real Estate Services, LLC in 2008, signed the Term Sheet and understood that Basmajian "was obligated to share one half of what he received with Matt Ruppel based upon the relative contributions of Basmajian and Ruppel at the time of the formation of 406 Partners and the loan Basmajian made to assist in the formation of Brighton." (*Id.* at ¶ 6.) Ruppel discovered the distributions immediately prior to filing this lawsuit in October 2014. (Compl. at ¶ 33.) In November 2015, the last piece of real estate held by 1415 South Main Street, LLC was sold, and the proceeds of the sale were divided equally between Ruppel and Basmajian. (Dkt. No. 73-4.)

## DISCUSSION

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

*Partnership*

Basmajian's first motion for summary judgment seeks a ruling as a matter of law that no general partnership was formed between Ruppel and Basmajian. (Dkt. No. 72.) Under Utah law[1], a partnership is "an association of two or more persons to carry on as co-owners a business for profit." U.C.A. § 48-1-3 (1998). Although "[t]he requirements for establishing the existence of a partnership are not exactly defined," the parties to a partnership must: "combine their money, effects, skill, labor and knowledge", constitute a "community of interest in the performance of the common purpose", maintain "a joint proprietary interest in the subject matter", including "a mutual right to control, a right to share profits," and a duty to share losses. *Mardanlou v. Ghaffarian*, 2006 UT App 165, ¶ 11, 135 P.3d 904, 908 *overruled on other grounds by Ellsworth Paulsen Const. Co. v. 51-SPR-L.L.C.*, 2008 UT 28, ¶ 11, 183 P.3d 248.[2]

Here, Ruppel has set forth sufficient facts to survive summary judgment with respect to his assertion that he maintained a general partnership with Basmajian that operated through limited liability companies. The parties undoubtedly carried on a business relationship for profit for many years. They combined their money and skills for the common purpose of the acquisition and disposition of REO assets. Ruppel has marshaled sufficient evidence to support a finding that the parties maintained a mutual right to control, and a right to share profits and losses. The ultimate determination of whether Ruppel and Basmajian maintained a general partnership that operated through limited liability companies, or whether those limited liability

---

[1] The parties agree that the code section, as it existed in 2004 and 2005, contained the cited language and is the applicable provision in determining the nature of the parties' relationship.

[2] *Ellsworth* overruled *Mardanlou* in requiring a duty to share losses in order to establish a partnership.

companies encompassed the entire relationship of the parties is one properly left in the discretion of a jury.

*Release*

Basmajian's second motion for summary judgment seeks a ruling as a matter of law that the release in the Redemption Agreement forecloses all of Ruppel's claims. (Dkt. No. 68.) Here, again, Ruppel has set forth sufficient evidence to survive summary judgment. Although the language of the release in the Redemption Agreement is very broad, it is limited by the phrase "as of the date of this Agreement[.]" (Dkt. No. 68-1.) The parties continued to maintain a business relationship subsequent to the execution of the Redemption Agreement. Accordingly, a factual question exists as to "claims, demands, obligations, losses, causes of action, damages, penalties, costs expenses, attorney's fees, liabilities and indemnities" that Ruppel had or may have claimed to have as of the date of the Redemption Agreement.

## CONCLUSION

For the foregoing reasons, Basmajian's Motions for Summary Judgment are hereby DENIED.

DATED this 15th day of August, 2017.

BY THE COURT:

_____
Dee Benson
United States District Judge